## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

WILLIE TURNER,                          :

     Plaintiff,                     :

vs.                                     :     CA 15-0440-MJ-C

ALABAMA & GULF COAST                    :
RAILWAY LLC,                            :

     Defendant.                     :

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Defendant Alabama & Gulf Coast Railway, LLC's, ("AGCR") Motion for Summary Judgment, (Doc. 48), and Brief in Support of Motion for Summary Judgment, (Doc. 49), (collectively, "motion for summary judgment"), which were filed on September 20, 2017, and Plaintiff Willie Turner, Jr.'s, Motion and Incorporated Memorandum to Strike Exhibits Submitted in Support of Defendant's Motion for Summary Judgment ("motion to strike exhibits"), (Doc. 53), which was filed on October 13, 2017. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 33 & 34 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the briefs of the parties and the record and those argument presented at oral argument, the undersigned has

determined Defendant AGCR's motion for summary judgment is due to be granted and Plaintiff Turner's motion to strike exhibits is due to be denied.

## I.  <u>PROCEDURAL HISTORY</u>

On June 12, 2017, Plaintiff Turner's current attorney filed a notice of appearance following the withdrawal of a former attorney. (Doc. 38). The parties previously attempted to negotiate settlement, and following Plaintiff Turner's counsel's appearance, the parties continued to attempt settlement; however, the negotiations were unsuccessful. (*See* Docs. 26, 39, & 42).

On July 12, 2017, the parties jointly motioned the Court for a telephonic status conference to reset deadlines to complete discovery. (Doc. 42, at 1). On the same day, this Court denied the motion, stating that the parties had not indicated what needs remained and how much time would be necessary. (Doc. 43). Defendant AGCR subsequently filed a more specific motion with the Court in which Defendant AGCR motion the Court to allow Defendant AGCR until August 15, 2017, to depose Plaintiff Turner. (Doc. 44). Despite the Court's previous order, and Defendant AGCR's limited motion to take only the deposition of the Plaintiff Turner, Plaintiff Turner did not file a similar motion for leave to depose any defense witness. (*See* Docket Sheet). Rather, Plaintiff emailed opposing counsel, seeking to conduct depositions following the close of discovery and without an order from this Court. (*See* Doc 53-1, at 2-4; Doc. 53-2, at 2).

Pursuant to this Court's Rule 16(b) Scheduling Order, (Doc. 35), as amended, (*see* Docs. 45 & 47), Defendant AGCR filed its motion for summary judgment on

September 20, 2017, (Doc. 48). Pursuant to the Court's submission order for Defendant AGCR's motion for summary judgment, (Doc. 51), Plaintiff Turner filed his response to Defendant AGCR's motion for summary judgment on October 13, 2017, (Doc. 52), and Defendant AGCR filed its reply on October 20, 2017, (Doc. 55).

On October 13, 2017, Plaintiff Turner contemporaneously filed his motion to strike exhibits, (Doc. 53), and pursuant to the Court's submission order for Plaintiff Turner's motion to strike exhibits, Defendants AGRC filed its response on October 24, 2017, (Doc. 56). The Court set this matter for oral argument on November 7, 2017, on Defendant AGCR's motion for summary judgment and Plaintiff Turner's motion to strike, (Docs. 54, 58, & 57), and the parties telephonically appeared before the undersigned on said date, (Doc. 60).

## II. <u>SUMMARY OF FACTS</u>

Defendant AGCR is a railroad, which operates from Pensacola, Florida, export terminals, through Alabama and Columbus, Mississippi. (Doc. 50-1, ¶ 2). On April 15, 2013, Defendant AGCR hired Plaintiff Turner, as a conductor. (Doc. 50-1, ¶ 4). Plaintiff Turner was assigned to a terminal in Magnolia, Alabama, which was designated his "home terminal." (Doc. 50-1, ¶ 4; Doc. 50-2, at 9). As a conductor, Plaintiff Turner's job assignments and location were governed by the seniority provisions of the collective bargaining agreement between Defendant AGCR and its operating employees, who are represented by the United Transportation Union. (Doc. 50-1, ¶ 5; Doc. 50-2, at 20-22).

Defendant AGCR, also, maintains an extra board at some terminal locations. (Doc. 50-1, ¶ 7). The extra board is a roster of employees who are available to cover assignments at various locations for regular employees. (Doc. 50-1, ¶ 7). Thus, employees who work the extra board may be assigned additional work in other terminals. (Doc. 50-1, ¶ 7; Doc. 50-2, at 10). Defendant AGCR pays conductors mileage to work at a terminal outside of the conductor's home terminal. (Doc. 50-1, ¶ 8).

In January 2014, Plaintiff Turner was assigned to the Demopolis, Alabama, terminal and consistently worked the Demopolis terminal from February 26, 2014, to October 2, 2014. (Doc. 50-1, ¶ 9). In August of 2014, Plaintiff Turner's father became ill. (Doc. 50-2, at 12-13). As a result, Plaintiff Turner sought and was approved for leave, which was effective September 16, 2014, under the Family and Medical Leave Act of 1993 ("FMLA"), (Doc. 50-2, at 13-15; Doc. 50-3, ¶ 3). In or about late September 2014, Plaintiff Turner sought and was approved for intermittent FMLA leave, which became effective on September 29, 2014. (Doc. 50-2, at 12-17; Doc. 50-3, ¶ 3). Plaintiff Turner took intermittent FMLA leave for approximately one year and did not return to work until August 2015. (Doc. 50-2, at 12-16; Doc. 50-3, at 25). Following Plaintiff Turner's intermittent FMLA leave, he took bereavement leave from June 12, 2015, to June 16, 2015, as well as additional vacation time following his bereavement leave. (Doc. 50-3, ¶ 4).

Plaintiff Turner contends, while he was on intermittent FMLA leave, he received between five (5) and ten (10) phone calls from Operations Manager

Timothy Wallender; Train Master Michael Grice; and Human Resources Director Cynthia Strawn or "Pam" in HR in regard to Plaintiff Turner returning to work. (Doc. 50-2, at 6-7 & 46-47). Plaintiff Turner alleges Wallender and Grice made the following statements to Plaintiff Turner: (1) "Willie, we hired you to do a job, we didn't hire you to sit at home," (Doc. 50-2, at 47-48); (2) "Willie, we need you to come on back to work, we'll work with you," (Doc. 50-2, at 37); (3) "You scratch my back and I'll scratch your back," (Doc. 50-3, at 56-57); (4) "[Plaintiff Turner] better enjoy the time he was off," (Doc. 50-3, at 57-58); (5) "[I]f [Plaintiff Turner] was going to play that game, to stay at home . . . [he] would be buried on the job that [he] was on, the Demopolis job," (Doc. 50-3, at 59); and (6) "[I]f Plaintiff Turner [was not] willing to work with them, they [would not] be willing to work with [him]," (Doc. 50-2, at 51). Plaintiff Turner concedes he took several additional months of FMLA leave after the communications. (Doc. 50-2, at 52). Moreover, Plaintiff Turner admits he was permitted to take all the FMLA leave that he wanted. (Doc. 50-2, at 44 & 45; Doc. 50-3, at 27).

Upon Plaintiff Turner's return to work for periods during his intermittent FMLA leave, and after his FMLA leave, he was returned to the same job as a conductor and assigned the same job responsibilities at the same rate of pay. (Doc. 50-2, at 19, 20-21, 27, 31, & 45-46; Doc. 50-3, at 25). Plaintiff Turner, also, received mileage reimbursements prior to, and following, returns from his intermittent FMLA leave. (Doc. 50-3, at 8-11; Doc. 50-4, at 5-18). Plaintiff Turner received mileage in July 2014 and August 2014, while he was assigned to the Demopolis

terminal; in September 2014 and October 2014, while he was assigned to the Magnolia, Alabama, terminal; and in November 2014 and December 2014, while he was assigned to the Fountain, Alabama, terminal. (Doc. 50-3, at 19-22; Doc. 50-4, at 5-18).

Prior to Plaintiff Turner's intermittent FMLA leave, and following his return, he was assigned to a home terminal at the Demopolis terminal. (Doc. 50-2, at 19 & 30). Plaintiff Turner was assigned to the Demopolis terminal until October 2, 2014. (Doc. 50-1, ¶ 9). Plaintiff Turner admits his assignment to the Demopolis terminal was proper and pursuant to his seniority under the collective bargaining agreement. (Doc. 50-1, ¶ 9; Doc. 50-2, at 19, 25-30, 31, 32-33, 35-36, & 37-38). The Demopolis terminal had no extra board or overtime work. (Doc. 50-2, at 31).

Plaintiff Turner's pay was reduced after his Demopolis terminal assignment because he was unable to work the extra board or overtime work. (Doc. 50-2, at 24-25). Plaintiff Turner desired to return to a prior terminal at which he had worked in Magnolia, Alabama; however, under the collective bargaining agreement, he was unable to transfer to the Magnolia terminal unless a job became available at that location and he was the most senior bidder for that job. (Doc. 50-2, at 22, 49, 52-53). Following Plaintiff Turner's return from FMLA leave, he contends he wrote a letter to Defendant AGCR management in which he complained Grice would not let him exercise his seniority to return to the Magnolia terminal. (Doc. 50-2, at 32-34 & 57-60; Doc. 50-3, at 6-8). The collective bargaining agreement between Defendant AGCR and union employees states temporary "vacancies known to be at least five

(5) scheduled days but less than thirty (30) days can be filled by the senior applicant for such position." (Doc. 50-1, ¶ 6; Doc. 50-1, at 17). Permanent vacancies are assigned to the senior qualified bidder. (Doc. 50-1, ¶ 6; Doc. 50-1, at 17). "Employees can move from their bid position only by bidding another vacant position, by exercising their seniority if their job is abolished, or if they are displaced by a senior employee exercising his/her seniority." (Doc. 50-1, ¶ 6; Doc. 50-1, at 17).

As a result of Plaintiff Turner's discontent with his Demopolis terminal assignment, Grice created a position for Plaintiff Turner in Fountain, Alabama. (Doc. 50-1, ¶ 12; Doc. 50-2, at 43 & 65; Doc. 50-3, at 1). The Fountain terminal had extra board work, and Plaintiff Turner was able to add his name to the extra board. (Doc. 50-2, at 42).

During Plaintiff Turner's intermittent FMLA leave, he was required to submit to drug testing following a leave of thirty (30) or more days. (Doc. 50-1, ¶ 14; Doc. 50-2, at 6). After thirty (30) or more days out of work, all employees of Defendant AGCR are required to submit to drug testing to return to work. (Doc. 50-1, ¶ 14). Accordingly, Plaintiff Turner was required to take a drug test after a return from a thirty-day (30) leave. (Doc. 50-1, ¶ 14). Plaintiff Turner was required to drive to different test locations based on the testing centers' hours of operation, scheduling, and availability. (Doc. 50-1, ¶ 14).

After an absence, employees of Defendant AGCR who are not on extended leave are required to update their availability status within twenty-four (24) hours

of the absence using the "Crew Callers" telephone line. (Doc. 50-1, ¶ 15). Plaintiff Turner was out sick on April 6, 2015; however, he failed to update his availability on the following day, April 7, 2015. (Doc. 50-1, ¶ 15). On April 8, 2015, Plaintiff Turner provided only twenty-six (26) minutes notice he would not be at work before his scheduled start time. (Doc. 50-1, ¶ 15).

Prior to Plaintiff Turner's FMLA leave, Wallender counseled Plaintiff Turner about Plaintiff Turner's late arrival to work. (Doc. 50-1, ¶ 16). On April 9, 2015, Wallender stood at Plaintiff Turner's depot and observed Plaintiff Turner arrive to work ten (10) minutes late at 7:10 a.m. (Doc. 50-1, ¶ 16). Wallender told Plaintiff Turner he was late, and Plaintiff Turner stated his "brakes on his truck got stuck." (Doc. 50-1, ¶ 16). Later that day, Plaintiff Turner submitted his Federal Hours of Service Timeslip that showed he arrived on duty at 7:00 a.m. (Doc. 50-1, ¶ 16). Wallender, later, learned Plaintiff Turner used the Unicorn pay system to clock in via his personal telephone prior to arriving at work. (Doc. 50-1, ¶ 16).

Wallender, also, reviewed Plaintiff Turner's clock in history and observed Plaintiff Turner clocked in at 6:40 a.m. on several occasions, though employees are not permitted to clock in more than fifteen minutes before the employee's on duty time. (Doc. 50-1, ¶ 16).

As a result of the above disciplinary issues, a formal investigation was initiated in regard to whether Plaintiff Turner: (1) failed to update his availability status within 24 hours with crew callers on April 7, 2015; (2) failed to give proper notice before taking off sick on April 8, 2015; (3) submitted a false Federal Hours of

Service Time sheet on April 9, 2015; and (4) called into the Unicorn pay system via his personal telephone showing himself on duty at 7:00 a.m. before arriving to work on April 9, 2015 at 7:10 a.m. (Doc. 50-1, ¶ 17; Doc. 50-3, at 28-30). Plaintiff Turner waived any right to contest the charges alleged in the Notice of Investigation and pled guilty to the charges. (Doc. 50-1, ¶ 17; Doc. 50-3, at 30-35; Doc. 50-4, at 23-24). As a result of Plaintiff Turner's guilty plea, he was suspended for a period of thirty (30) days. (Doc. 50-3, at 31; Doc. 50-4, at 23-24).

Plaintiff Turner remains employed with Defendant AGCR. (Doc. 50-2, at 39). Plaintiff Turner admits his seniority has improved and he has been assigned extra board work. (Doc. 50-2, at 39). Defendant AGCR, also, sent Plaintiff Turner to engineer training school, which is a progression that may only occur after completing conductor training. (Doc. 50-1, ¶ 19; Doc. 50-2, at 39). Plaintiff Turner concedes his current location allows him to work the extra board and receive mileage if he works an assignment out of town. (Doc. 50-2, at 39).

### III.  Plaintiff's Rule 56(d) Motion to Strike Exhibits

On October 13, 2017, Plaintiff Turner filed his motion to strike exhibits, (Doc. 53), in which he motions the Court to strike certain exhibits submitted by Defendant AGCR in support of its motion for summary judgment, including the Declaration of Operations Manager Timothy Wallender and the Declaration of Human Resources Director Cynthia Strawn. (Doc. 53, at 1). Plaintiff Turner, also, argues he is unable to adequately respond to Defendant AGCR's motion for summary judgment because he needs to obtain additional information, and

alternatively motions the Court to grant him relief pursuant to Rule 56(d), Federal Rules of Civil Procedure, (hereinafter "FRCP" followed by the Rule number). (Doc. 53, at 7).

To begin, FRCP 12(f) states, "The court may strike from a pleading any insufficient defenses or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff Turner's motion to strike exhibits is improperly styled and should be styled as an objection pursuant to FRCP 56(c)(4) and the Federal Rules of Evidence.

However, Plaintiff Turner does challenge the declaration of Wallender based on FRCP 56(c)(4). (Doc. 53, at 6-7). FRCP 56(c)(4) states, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. C. P. 56(c)(4). Plaintiff Turner argues Wallender does not provide a basis on which he is competent to testify in regard to the content and application of the collective bargaining agreement. (Doc. 53, at 7). Wallender states in his declaration his statements are based on his "personal knowledge, as well as knowledge that [he] gained from [his] review of business records of [Defendant AGCR], which were made at or about the time of the events recorded, and which are prepared and maintained in the ordinary course of [Defendant AGCR's] business." (Doc. 50-1, ¶ 1). Further, Wallender states he was the Operations Manager for Defendant AGCR from May 2013 to January 2016, which spanned the period of time in which Plaintiff Turner

was hired and the events of this lawsuit took place, (*see* Doc. 50-1, ¶ 1), and supervised the conductors, which was a position held by Plaintiff Turner during the events of this lawsuit, (*see* Doc., ¶ 3). A review of the content of Wallender's declaration and the record of this action as a whole convinces the undersigned Wallender's declaration satisfies the requirements of FRCP 56(c)(4).

As to Plaintiff Turner's motion in the alternative for relief pursuant to FRCP 56(d), if a party opposing summary judgment demonstrates "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

> To obtain [an FRCP] 56(d) continuance, the party must "set[ ] forth with particularity the facts the moving part expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). "The party seeking to delay adjudication of the motion may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Vision Bank v. Merritt*, Civ. A. No. 10-0301-WS-C, 2010 WL 54741761, *2 (S.D. Ala. 2010) (citing *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (internal citations and quotation omitted)). Additionally, a party will not be entitled to conduct further discovery under [FRCP] 56(d) where the absence of evidence essential to that party's case is the result of that party's lack of diligence in pursuing such evidence through permitted methods of discovery. *Barfield* [*v. Brierton*], 883 F.2d [923,] 932 [(11th Cir. 1998)] (finding that no additional discovery should be granted when the absence of information was due to the plaintiff's lack of diligence); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (declining to consider whether the plaintiff has shown why she needs additional

discovery to create a genuine issue of fact because she had not bee diligent); *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.3d 1313, 1316 (11th Cir. 1990) (affirming the district court's denial of [an FRCP] 56(d) motion where the parties agreed on a discovery schedule which the trial court extended several times).

*Colony Ins. Co. v. C&M Constr. Co., LLC*, Civil Action No. 13-00227-CG-B, 2014 WL 12616817, *1 (S.D. Ala. Feb. 12, 2014).

Here, Plaintiff Turner has failed to establish he is entitled to the protections of FRCP 56(d). As to the facts that Plaintiff Turner expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment, he fails to put forth such information. As to Plaintiff Turner's diligence in pursuing the evidence he seeks through permitted methods of discovery, the parties initially sought to extend scheduling deadlines in this matter on July 12, 2017. (*See* Doc. 42). On the same day, this Court denied the motion, and found the parties had not indicated what needs remained and how much time would be necessary. (Doc. 43). Defendant AGCR, then, filed a more specific motion to extend the deadline to take Plaintiff Turner's deposition. (Doc. 44). Plaintiff Turner could and should have filed, before the close of discovery, a similar motion that sought an order from the Court to extend any deadlines to complete the depositions of defense witnesses. However, Plaintiff Turner failed to do so. Rather, Plaintiff Turner sought to conduct the depositions three months after the close of discovery without an order from the Court that authorized him to complete those depositions outside the discovery deadline. (*Compare* Doc. 53-1, at 4 *with* Doc. 35, at 5-6). The Court finds Plaintiff Turner has not shown he is entitled to relief under FRCP 56(d).

Accordingly, Plaintiff Turner's motion to strike exhibits, (Doc. 53), is **DENIED**.

### IV.     Defendant AGCR's Motion for Summary Judgment

#### a.     Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then

devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion. This effectuates the purpose of summary judgment which 'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Thus, mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.) (internal citations and quotations omitted), *cert. denied sub nom. Jones v. Resolution Tr. Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *see Comer,* 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendant is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. *Comer,* 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than some metaphysical doubt as to the material facts. A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski,* 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Tr. Corp.,* 43 F.3d at 599. Accordingly, the Court limits its review to those arguments expressly advanced by the parties.

### b.  Introduction to FMLA Claims

> Among the substantive rights granted by the FMLA to eligible employees are the right to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be

restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. §2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

*Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (footnote omitted).

## 1. Plaintiff Turner's FMLA Interference Claim

Plaintiff Turner contends Defendant AGCR interfered with his FMLA leave when Wallender, Grice, Strawn, and another HR employee called Plaintiff Turner five (5) to ten (10) times during his FMLA leave. (Doc. 50-2, at 6-7 & 46-47). In some of the calls, Plaintiff Turner alleges he was asked if he could come back to work and told the company would accommodate him. (Doc. 50-2, at 47-48). Plaintiff Turner, also, contends Wallender and Grice made statements such as Defendant AGCR "didn't hire [him] to sit at home" and that "if [he] was going to play that game, to stay at home . . . [he] would be buried on the job." (Doc. 50-3, at 59).

To raise an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied," *Strickland*, 239 F.3d at 1206-07, and she "has been prejudiced by the violation," *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed.

2d 167 (2002). "An employee has the right following FMLA leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Martin v. Brevard Cnty Pub. Sch.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008) (quoting 29 U.S.C. § 2614(a)(1)(A)).

The statements made by Wallender and Grice that Plaintiff Turner alleges do not constitute FMLA interference. Plaintiff Turner admits he was not forced to come back to work, not threatened with termination, and he was permitted to take all the FMLA leave he wanted. (Doc. 50-2, at 27, 36-37, 44, & 48). The record shows Plaintiff Turner sought and was granted FMLA leave twice within a one-year span. The first such FMLA leave became effective on September 16, 2014. (Doc. 50-2, at 13-15; Doc. 50-5, ¶ 3). Thereafter, Plaintiff Turner was approved for intermittent FMLA leave that began on September 29, 2014. (Doc. 50-2, at 12-17; Doc. 50-5, ¶ 3). Plaintiff Turner testified he took intermittent FMLA leave for approximately one year and did not return to work until August 2015. (Doc. 50-2, at 12-16; Doc. 50-3, at 25).

Accordingly, Plaintiff Turner cannot establish he suffered any harm as a result of the alleged calls. *See e.g. Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 818-19 (11th Cir. 2016) (concluding the district court did not err in finding occasional and brief telephone calls of a limited nature did not interfere with the employee's FMLA leave where the employee was not required to perform work during her FMLA leave, she received all the leave that she was due, and she suffered no consequences for refusing to take or respond to occasional telephone

calls while she was on leave).[1]  Indeed, this case is distinguishable from FMLA

interference cases premised on a supervisor discouraging an employee from taking

additional FMLA leave because Plaintiff Turner was permitted to take all the

FMLA leave that he wanted.  *See e.g. Diamond v. Hospice of Fla. Keys, Inc.*, 677 F.

App'x 586,  (11th Cir. 2017) (finding employer interfered with employee's FMLA

rights where communications discouraged employee from taking leave and

employee testified that she would have taken more time off if not discouraged from

doing so).[2]  Moreover, the record shows Defendant AGCR reinstated Plaintiff

Turner in the same job and assigned him the same job responsibilities at the same

rate of pay.  (Doc. 50-2, at 19, 20-21, 27, 31, & 45-46; Doc. 50-3, at 25).

## 2.    Plaintiff's FMLA Retaliation

Plaintiff Turner, also, contends Defendant AGCR retaliated against him for

taking FMLA leave by precluding him from exercising his seniority rights;

precluding him from obtaining mileage, overtime, and extra board work; requiring

him to take drug tests; and suspending him for thirty (30) days after he pled guilty

to multiple work violations.  However, Plaintiff Turner fails to set forth facts that

establish the elements of an FMLA retaliation claim, and the evidence in the record

establishes he did not suffer any adverse employment action for taking FMLA leave.

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[2] Significantly, Plaintiff Turner failed to offer any factual support in his summary judgment briefing to establish his claims.  Nor does Plaintiff Turner challenge the arguments raised in Defendant AGCR's motion for summary judgment.  Rather, Plaintiff Turner exclusively relied on his motion to strike the declarations of Wallender and Strawn.

[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *King* [*v. Preferred Tech. Grp.*], 166 F. 3d [887,] 891 [(7th Cir. 1999)].  In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.*

. . .

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for evaluating Title VII discrimination claims. *See Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 792, 798 (11th Cir. 2000).  In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

*Strickland*, 239 F.3d at 1207.

Plaintiff Turner alleges Wallender and Grice made the following statements to Plaintiff Turner:  (1) "Willie, we hired you to do a job, we didn't hire you to sit at home," (Doc. 50-2, at 47-48); (2) "Willie, we need you to come on back to work, we'll work with you," (Doc. 50-2, at 37); (3) "You scratch my back and I'll scratch your back," (Doc. 50-3, at 56-57); (4) "[Plaintiff Turner] better enjoy the time he was off," (Doc. 50-3, at 57-58); (5) "[I]f [Plaintiff Turner] was going to play that game, to stay at home . . . [he] would be buried on the job that [he] was on, the Demopolis job," (Doc. 50-3, at 59); and (6) "[I]f Plaintiff Turner [was not] willing to work with them, they [would not] be willing to work with [him]," (Doc. 50-2, at 51).  While those statements could indicate their intent to retaliate, Plaintiff Turner did not suffer an

adverse employment action, which the Court will discuss.

To the extent Plaintiff Turner contends his assignment to the Demopolis terminal constituted an adverse action, it is undisputed his job assignments and locations were governed by the seniority provisions of the collective bargaining agreement. (Doc. 50-2, at 20-22). Additionally, the evidence in the record demonstrates Plaintiff Turner was assigned to the Demopolis terminal prior to his FMLA leave, (Doc. 50-2, at 19 & 30), and Plaintiff Turner conceded in his deposition the Demopolis terminal assignment was based on his lack of seniority under the Union contract. (Doc. 50-2, at 19, 30, 31, 32-33, 35-36, 37-38, 53, & 56). Accordingly, Plaintiff Turner has not established the Demopolis terminal assignment constituted an adverse employment action.

To the extent Plaintiff Turner contends he was unable to work the extra board and receive overtime during his assignment at the Demopolis terminal, the record shows Plaintiff Turner was unable to work the extra board or receive overtime because the Demopolis terminal did not offer overtime or extra board work. (Doc. 50-2, at 31). The fact that the Demopolis terminal did not offer overtime or extra board work for Plaintiff Turner, therefore, does not constitute an adverse employment action.

To the extent Plaintiff Turner contends he was precluded from obtaining mileage, Plaintiff Turner, also, alleges Grice told him he would never work any job where he was paid mileage if he left the Demopolis terminal job. (Doc. 50-2, at 60). Plaintiff Turner was only entitled to mileage to work at a terminal outside of his

home terminal, (Doc. 50-2, at 9 & 10), and he received mileage during his FMLA leave, (Doc. 50-2, at 61; Doc. 50-3, at 8-11; Doc. 50-4, at 5-18). In his deposition, Plaintiff Turner could not recall the periods in which he claims to have not received mileage, but the evidence establishes Plaintiff Turner received mileage in September 2014 and October 2014 while he was placed in Magnolia, Alabama, and in November 2014 and December 2014 while he was placed in Fountain, Alabama. (Doc. 50-3, at 19-22; Doc. 50-4, at 5-18). Moreover, Plaintiff Turner concedes his current location allows him to receive mileage and meals if he works an assignment out of town. (Doc. 50-2, at 63-64).

To the extent Plaintiff Turner contends he was not allowed to exercise his seniority rights during his assignment to the Demopolis terminal, Plaintiff Turner alleges Defendant AGCR employed three conductors who had less seniority than he: "Todd Rowell," "Wesley Lynam," and "BJ Gates," (Doc. 50-2, at 22-24 & 49-51; Doc. 50-3, at 15-16 & 51-52), who, once they qualified, Plaintiff Turner should have been able to "make them take" his job at the Demopolis terminal, (Doc. 50-2, at 22-23). However, the record establishes Defendant AGCR took no adverse action against Plaintiff Turner with regard to his seniority rights. The collective bargaining agreement expressly provides "[e]mployees can move from their bid position only by bidding another vacant position, by exercising their seniority if their job is abolished, or if they are displaced by a senior employee exercising his/her seniority." (Doc. 50-1, ¶ 6; Doc. 50-1, at 18). Plaintiff Turner does not allege his job assignment at the Demopolis terminal was abolished or was displaced by a senior employee.

Accordingly, the only way Plaintiff Turner could have transitioned to a different terminal was if a job assignment became available and he was the most senior bidder for that position. (*See* Doc. 50-1, ¶ 6; Doc. 50-1, at 18). Plaintiff Turner has not presented evidence that any such job opening became available at another terminal nor that he bid on a job at another terminal and was the most senior bidder.

The only evidence that Plaintiff Turner adduced in regard to his seniority is the name of one individual that Defendant AGCR had no record of employing, "BJ Gates," (Doc. 50-3, at 51-52), and two individuals, Todd Rowell and Wesley Lynam, who were assigned to the Magnolia terminal and never transferred from there during their employments, (Doc. 50-1, ¶ 13). Therefore, Plaintiff Turner could not have replaced either at the Magnolia terminal.

Finally, to the extent Plaintiff Turner alleges he was required to take drug tests at various testing facilities during his FMLA leave, the record establishes Plaintiff Turner took FMLA leave at times up to or exceeding thirty (30) days. (Doc. 50-1, ¶ 14). Defendant AGCR's drug testing policy required any employee who is absent for thirty (30) days or more to take a drug test prior to returning to work.[3] (Doc. 50-1, ¶ 14). Thus, when Plaintiff Turner indicated a desire to return to work after an absence of thirty (30) days or more, Defendant AGCR required him to take a drug test. (Doc. 50-1, ¶ 14). Moreover, the record establishes the appropriate drug testing facility was assigned based on hours of operation, scheduling, and

---

[3] Plaintiff Turner testified he did not have knowledge of Defendant AGCR's drug testing policy, and, therefore, cannot dispute the policy. (Doc. 50-3, at 27).

availability. (Doc. 50-1, ¶ 14). Because Defendant AGCR followed standard company procedures when it required Plaintiff Turner to take a drug test prior to his return from a thirty-day (30) absence, he cannot establish the conduct constituted an adverse action. Therefore, Plaintiff Turner cannot prove his retaliation claim because he has not shown he suffered an adverse employment action.

Accordingly, Defendant AGCR's motion for summary judgment, (Doc. 53), is **GRANTED**.

## IV.    CONCLUSION

Based on the foregoing, the Court finds Defendant AGCR's motion for summary judgment, (Doc. 48), is due to be and hereby is **GRANTED**, and Plaintiff Turner's claims are **DISMISSED WITH PREJUDICE.** Additionally, Plaintiff Turner's motion to strike exhibits, (Doc. 53), is due to be and hereby is **DENIED**.

In accordance with this Order and Rule 58, FED. R. CIV. P., the Court will enter a final judgment that dismisses this matter with prejudice.

**DONE** and **ORDERED** this the 22nd day of December 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**